OPINION
Defendant, Sidney Davis, appeals from his conviction and sentence for failing to obey a legal order of a housing inspector.
The evidence presented at trial by the City of Dayton demonstrates that on May 1, 1996, Max Fuller, a City of Dayton housing inspector, inspected the property located at 412-414 Forest Avenue, Dayton. Fuller discovered eleven possible violations of the City's housing code, and he prepared a legal order requiring that these violations be remedied within sixty days. Upon reviewing deed records and existing nuisance abatement and housing inspection records for this property, Fuller identified the owners as Lillian S. Davis-Mize and Sidney Davis. On May 24, 1996, Fuller posted a copy of his legal order on the front door of the property, and sent copies by certified mail to Sidney Davis and Lillian Davis-Mize. Both of the return receipt cards for the certified mail were subsequently signed by Sidney Davis.
About May 30, 1996, Sidney Davis contacted Fuller and discussed compliance with the legal order. On July 8, 1996, Sidney Davis appealed the order to the Housing Appeal Board. At the subsequent hearing on August 16, 1996, Sidney Davis told the board he intended to sell the property either as is or repaired, whichever occurred first. The board granted Sidney Davis an extension of time until November 15, 1996, to remedy the violations noted in the legal order. Citing health and economic reasons, Sidney Davis subsequently sought additional extensions of time to comply with the order. Between May 1996 and September 1998, Sidney Davis contacted Fuller several times about repairing and maintaining the property that was the subject of the May 24, 1996 legal order.
On April 12, 1999, Chris Dahlin, a housing inspector who had succeeded Max Fuller, inspected the property at 412-414 Forest Avenue, Dayton, and discovered that some of the housing violations identified in the May 24, 1996 legal order had not been remedied. Dahlin and Sidney Davis subsequently met on April 21, 1999, to discuss whether the needed repairs would be made. On May 3, 1999, Dahlin reinspected the property and found that some of the violations identified in the May 24, 1996 order still existed.
On May 24, 1999, a criminal complaint was filed in Dayton Municipal Court charging Sidney Davis with the failure to obey a legal order of a housing inspector, in violation of Section 93.05 of the Revised Code General Ordinances of Dayton. Following a jury trial, Davis was found guilty as charged. Davis' motion for a judgment notwithstanding the verdict and/or a new trial was overruled by the trial court. Davis was sentenced to sixty days imprisonment, forty days of which was suspended on condition of three years probation, and fined five hundred dollars plus court costs. After Davis had served a few days in jail, the trial court modified the jail time to eight consecutive weekends.
Sidney Davis has timely appealed to this court from his conviction and sentence. We stayed Davis' sentence pending this appeal.
 FIRST ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED WHEN IT FAILED TO DISMISS THE CITY OF DAYTON CRIMINAL COMPLAINT AS REQUESTED BY DEFENDANT IN HIS COURT FILING OF JUNE 16 AND 21, 1999 DUE TO THE FACT THAT DEFENDANT WAS NOT THE OWNER OF 412-414 FOREST AVENUE, DAYTON, OHIO, MAY 24, 1996, AS DELINEATED BY HIM IN THE STATEMENT OF FACTS.
In charging a violation of Section 93.05 of the Revised Code General Ordinances of Dayton, the criminal complaint in this case alleged that Sidney Davis, being the owner of the property located at 412-414 Forest Avenue, Dayton, did unlawfully fail to obey a legal order of a housing inspector. Prior to trial Davis filed a motion to dismiss this charge, which the trial court overruled. Davis now argues that the trial court erred when it overruled his motion to dismiss.
The gist of Davis' motion to dismiss was that the State could not prove that Davis is the owner of the property located at 412-414 Forest Avenue, Dayton, one of the essential elements of the offense charged. Questions regarding the sufficiency of the evidence cannot be determined before trial by way of a pretrial motion. State v. McNamee (1984),17 Ohio App.3d 175; State v. O'Neal (1996), 114 Ohio App.3d 335. That was the defect that Davis' motions to dismiss alleged. Therefore, the court did not err when it overruled his motion.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR A JUDGMENT N.O.V. OR IN THE ALTERNATIVE A MOTION FOR A NEW TRIAL, BECAUSE THE JURY FOUND THE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT WHEN THE EVIDENCE SHOWED DOUBT AND THE JURY'S CHARGE WAS TO FIND DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AS DELINEATED IN DEFENDANT'S FILING OF AUGUST 2, 1999.
Within fourteen days after the jury returned its guilty verdict, Davis timely filed a motion seeking a judgment of acquittal notwithstanding the guilty verdict per Crim.R. 29(C), or in the alternative a new trial per Crim.R. 33. The trial court overruled the motions. Davis argues on appeal that the trial court erred in failing to grant his motion for judgment N.O.V. or a new trial.
Crim.R. 33 provides in relevant part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 (3) Accident or surprise which ordinary prudence could not have guarded against;
 (4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;
(5) Error of law occurring at the trial;
* * *
 (E) Invalid grounds for new trial. No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
 (1) An inaccuracy or imperfection in the indictment, information, or complaint, provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him.
 (2) A variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby;
 (3) The admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby;
 (4) A misdirection of the jury, unless the defendant was or may have been prejudiced thereby;
 (5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial.
In large part Davis' motion is predicated upon his claim that the evidence presented by the City of Dayton is insufficient to establish his guilt beyond a reasonable doubt and that the guilty verdict is against the manifest weight of the evidence.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Statev. Thompkins, (1997), 78 Ohio St.3d 380 . The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
The evidence presented by the City of Dayton clearly demonstrates that on May 24, 1996, a legal order was issued by a Dayton housing inspector identifying eleven alleged violations of the City's housing code the inspector observed at the real property located at 412-414 Forest Avenue. The order required Davis to make the necessary repairs and remedy those violations within sixty days. A subsequent inspection of that property three years later on May 3, 1999 revealed that some of the violations identified in the May 24, 1996 order still existed. Davis argues, however, that he is not legally responsible for the housing violations discovered in 1996 and was not obligated to remedy those violations because the City of Dayton failed to prove that he was the owner of the real property at 412-414 Forest Avenue. We disagree.
The evidence demonstrates that from February 9, 1984 until March 5, 1993, Davis held title to the real property concerned. On or about March 5, 1993, Davis transferred the title to his daughter, Lillian Davis-Mize. Even after 1993, however, Davis maintained and exercised control over the property. In 1994, when the property was the subject of a nuisance abatement action, Davis on several occasions requested and received permission to enter the property. In May 1994, Davis submitted documents to Dayton housing officials indicating that he was the agent for the owner, Lillian Davis-Mize. In August 1995, Davis notified Dayton housing officials that the property was included in his bankruptcy proceeding and he was seeking a stay of the City's plans to demolish the structure.
After the housing inspector's legal order was issued on May 24, 1996, and served upon Davis and his daughter, Lillian Davis-Mize, it was Davis alone who responded to that order and signed both return receipt cards for the certified mail. Davis contacted Max Fuller and told him he would take care of the property and the legal order. On July 8, 1996, Davis alone appealed the legal order to the Housing Appeal Board. At the subsequent hearing held on August 16, 1996, Davis told the Board that it was his intention to sell the property either as is or repaired, whichever occurred first. The Board granted Davis until November 15, 1996 to make the needed repairs and comply with the May 24, 1996 order. Citing poor health and economic reasons, Davis subsequently obtained from housing officials additional extensions of time to comply with the order.
On January 28, 1998, Lillian Davis-Mize transferred title to this property back to Sidney Davis. Between May 1996 and September 1998, Davis alone contacted Max Fuller on several occasions about maintaining this property and complying with the May 24, 1996 order.
As used in Chapter 93 of the Revised Code General Ordinances of Dayton, known as the housing code, "owner" is defined much more broadly than simply someone who holds the title to property. Section 93.02 of the R.C.G.O. provides:
 (X) "OWNER." The owner or owners of the deed or freehold of the premises or lesser estate therein, contract buyer, a mortgagee or vendee in possession, assignee of rents, receiver, executor, administrator, trustee, lessee, or other person, firm, or corporation in control of a building; or their duly authorized agents. Any such person thus representing the owner shall be bound to comply with the provisions of this chapter to the same extent as if he were the owner. (Emphasis added.)
Viewing the evidence presented in this case in a light most favorable to the City of Dayton, we conclude that a rational trier of facts could find that all of the elements of the offense charged, including the fact that Sidney Davis was the "owner" of this property as that term is defined by City ordinance, were proven beyond a reasonable doubt. Davis' conviction is supported by legally sufficient evidence.
Davis' testimony that he took responsibility for maintaining and caring for this property on behalf of his daughter only in his capacity as the father of the owner and not as an agent of the owner creates a conflict in the evidence. It was up to the jury as trier of facts to determine which witnesses to believe and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230. In reviewing this entire record, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Davis' conviction is not against the manifest weight of the evidence.
As other grounds for a new trial, and unrelated to the sufficiency of the evidence, Davis implies that the jury may have found him guilty due in part due to their jealousy over Davis' professional success as an engineer and college professor. There is absolutely nothing in this record which supports that allegation. Davis also complains that there were no black males seated on his jury. Davis has failed, however, to provide this court with those portions of the record exemplifying this claimed error and necessary for its resolution, that is, the transcript of voir dire proceedings. Accordingly, we must presume the regularity and validity of the trial court's proceedings in that regard. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197; Dayton v. Kinney
(November 24, 1999), Montgomery App. No. 17506, unreported.
Davis also argues that because the City of Dayton housing supervisor who signed the criminal complaint that was filed in municipal court did not testify at trial, he was deprived of his constitutional right to confront his accusers. We disagree. Every witness who testified on behalf of the City of Dayton against Sidney Davis at trial was thoroughly cross-examined by Davis. Lee Fenner, the housing supervisor who signed the complaint, did not testify at trial and therefore provided no evidence against Davis. On the other hand, Davis himself could have subpoenaed Fenner to testify, had he chosen to do so. No violation of Davis' right of confrontation is demonstrated by this record. The trial court was correct in concluding that Davis had failed to demonstrate any grounds justifying either a new trial or judgment notwithstanding the verdict.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED WHEN IT PERMITTED THE PLAINTIFF, CITY OF DAYTON, TO REACH BACK TO OLD AND STALE HOUSING VIOLATIONS ON 412/414 FOREST AVENUE, DAYTON, OHIO, OF MAY 24, 1996, AND FOCUS ENTIRELY ON DEFENDANT RATHER THAN THE OWNER, DEFENDANT'S DAUGHTER.
 FOURTH ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED WHEN IT PERMITTED THE PLAINTIFF, CITY OF DAYTON, TO PROSECUTE DEFENDANT IN 1999 WITH FLAWED AND DEFECTIVE SO-CALLED MAY 24, 1996, EVIDENCE WHEN, IN FACT, THE DEFENDANT WAS NOT THE OWNER UNTIL FEBRUARY 2, 1998, CONSIDERING THAT THE PLAINTIFF NEVER FOCUSED ON THE OWNER OF SAID PROPERTY BETWEEN MARCH 5, 1993, AND FEBRUARY 2, 1998, BUT FOCUS ON DEFENDANT MAY 3, 1999, WITH MAY 24, 1996 SO-CALLED EVIDENCE AGAINST HIM AND ONLY HIM.
These assignments of error raise the same issues: (1) whether the trial court erred in admitting evidence regarding the housing violations identified in the May 24, 1996 order; and, (2), whether the evidence presented demonstrates that Davis was the owner of the property.
The admission or exclusion of evidence is a matter resting within the sound discretion of the trial court and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v.Hymore (1967), 9 Ohio St.2d 122; State v. Long (1978), 53 Ohio St.2d 91. An abuse of discretion connotes more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151.
The May 24, 1996 legal order issued by Dayton housing inspector Max Fuller, which ordered Davis to remedy eleven identified violations of the housing code, was relevant evidence essential to the State's proof of the offense charged, which was that Davis had failed to comply with that legal order. Davis suggests no reason in law why this evidence was not admissible. Instead, he simply labels it "old and stale housing violations" and "flawed and defective." The record clearly demonstrates that when housing inspector Chris Dahlin inspected this property in April and May 1999, the May 24, 1996 order remained open and valid. Nothing even remotely approaching an abuse of discretion is demonstrated by the trial court's admission of evidence regarding the May 24, 1996 housing violations and legal order issued thereon.
With respect to whether the evidence presented demonstrates that Davis, rather than his daughter, Lillian Davis-Mize, was the owner of this property, we have already concluded in our disposition of the second assignment of error that the evidence is sufficient to establish that Davis was the owner as that term is defined by Dayton ordinance.
The third and fourth assignments of error are overruled.
 FIFTH ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED WHEN IT DID NOT RESPOND TO DEFENDANT PRE-SENTENCING SUBMISSION MOTION AND/OR CONSIDER IT FILED AUGUST 2, 1999, IN SAID COURT BEFORE IMMEDIATELY INCARCERATING DEFENDANT AUGUST 4, 1999 WITHOUT CONSIDERING WORK RELEASE AS REQUESTED IN DEFENDANT AUGUST 2, 1999 FILING WITH MITIGATING AND EXTENUATING CIRCUMSTANCES.
Davis argues that the trial court failed to consider the sentencing memorandum he filed prior to imposing sentence upon him. According to Davis, this is made clear by the fact that the trial court did not grant Davis work release as he had requested in his memorandum.
Not adopting Davis' sentencing recommendations or imposing the sentence Davis urged the court to impose is obviously not the same as failing to consider those recommendations. Once again, Davis has not provided this court with those portions of the record, in this instance the sentencing proceedings, which both exemplify this claimed error and are necessary for its resolution. Thus, we must presume the regularity and validity of the trial court's sentencing proceedings. Knapp v. Edward Laboratories,supra.
The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT SHOWED ERRORS OF OMISSION AND COMMISSION AND DEMONSTRATED BIAS AND SUBJECTIVITY TOWARD DEFENDANT CONSIDERING THE TRANSCRIPT OF TESTIMONY OF CITY OF DAYTON WITNESS AND THE JUDGE'S COURTROOM DEMEANOR DURING SENTENCING, CONSIDERING THE RECORD OF THIS CASE AS WHOLE OF TRIAL COURT Case No. 99-CRB-6210.
Davis complains of judicial bias as reflected by the trial judge's courtroom demeanor during sentencing. The record before this court does not support such an allegation.
There is nothing in the record of the trial proceedings which even suggests, much less demonstrates, that the trial judge was biased against Davis. As for Davis' claim that the judge's courtroom demeanor during sentencing indicates bias, Davis has failed to provide this court with those portions of the record necessary to exemplify error claimed. Thus, we presume the regularity and validity of the trial court's proceedings in that regard. Knapp v. Edwards Laboratories, supra. Furthermore, it is most unlikely that a written record of the trial court's proceedings would demonstrate body language and voice inflection, a person's demeanor.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE SAID TRIAL COURT ERRED WHEN IT PERMITTED ITS CHIEF BAILIFF TO ASSUME THE ROLE AS A COURT REPORTER, UNQUALIFIED, AS DOCUMENTED IN FILINGS TO THIS COURT OF NOVEMBER 23, 1999.
Davis complains that the municipal court's bailiff usurped the role of a court reporter to the extent he operated the audio recording device which was used to record the trial court proceedings.
Davis did not raise this issue in the trial court below. Rather, he raises it for the first time on appeal. Appellate courts will ordinarily not consider errors which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when any error could have been avoided or corrected by the trial court. State v. Childs (1968), 14 Ohio St.2d 56; State v.Williams (1977), 51 Ohio St.2d 112; State v. Awan (1986), 22 Ohio St.3d 120. Having failed to raise this issue in the trial court, Davis has waived it for purposes of appellate review.
Parenthetically, we note that Davis does not allege that the official transcript of the trial proceedings prepared from the audio recordings is inaccurate or incomplete.
The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE DAYTON MUNICIPAL COURT ERRED BY NOT PROTECTING THE DEFENDANT'S 14TH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW BY IMPOSING EXTREME PENALTIES OF IMMEDIATE INCARCERATION, FINE OF $560 AND PLACED ON 3 YEARS' PROBATION. THIS WAS AN ERROR OF CRUEL AND UNUSUAL PUNISHMENT, BASED UPON CIRCUMSTANCES SURROUNDING THIS CASE OF MALICIOUS PROSECUTION OF AN UPSTANDING, FORTHRIGHT CITIZEN OF THIS COUNTRY.
Davis alleges that the sentence imposed upon him by the trial court was excessive and constitutes cruel and unusual punishment.
The trial court sentenced Davis to sixty days of incarceration, with forty days being suspended, three years of unsupervised probation, and a five hundred dollar fine. That sentence is within the statutory limits authorized for misdemeanors of the third degree.
Davis' sentence is not "grossly disproportionate to the crime,"Harmelin v. Michigan (1991), 501 U.S. 957, nor does it shock the conscience of the community. No abuse of discretion has been demonstrated in the sentence imposed by the trial court. Accordingly, this court will not disturb that sentencing decision. Miamisburg v. Smith (1982),5 Ohio App.3d 109.
Moreover, the record before this court does not demonstrate any other errors in the sentencing proceedings of the trial court, inasmuch as Davis has failed to provide this court with a transcript of the sentencing proceedings. Therefore, we must presume the regularity and validity of the trial court's proceedings in that regard. Knapp v.Edwards Laboratories, supra.
The eighth assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, J. and FAIN, J., concur.